IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE A. CISNEROS, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| JANET NAPOLITANO,[1] SECRETARY § | SA-08-CV-0856 OG (NN) | |
| OF DEPARTMENT OF HOMELAND § | | |
| SECURITY, § | | |
| § | | |
| Defendant. § | | |

# REPORT AND RECOMMENDATION

TO:    Honorable Orlando Garcia
        United States District Judge

This report and recommendation addresses the defendant's motion for summary judgment.[2] After reviewing the parties' submissions and the applicable law, I recommend granting the motion.

Plaintiff Joe A. Cisneros alleges that because of his age he was denied a promotion to an Assistant Special Agent in Charge (ASAC) position with the Department of Homeland Security's Immigration and Customs Enforcement (ICE) division.[3] Cisneros filed this suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, against Alonzo Pena and Jerry Robinette (the recommending officials) and Marcy Forman (the selecting

---

[1] The plaintiff named Michael Chertoff, Secretary of Department of Homeland Security, as a defendant in his complaint. Janet Napolitano was later confirmed by the Senate as the Secretary of the Department of Homeland Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Secretary Napolitano is substituted as the defendant in lieu of Chertoff.

[2] Docket entry # 34.

[3] *See* docket entry # 1.

official). Cisneros's suit also named as a defendant Janet Napolitano, in her official capacity as Secretary of the Department of Homeland Security. Prior to filing this lawsuit, an EEOC administrative law judge (ALJ) conducted a hearing on Cisneros's claim. Cisneros filed this lawsuit after receiving an unfavorable decision from the EEOC.

The claims against Pena, Robinette, and Forman have already been dismissed.[4] Napolitano now asks for summary judgment on Cisneros's claim. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] Cisneros objects to Napolitano's summary-judgment appendix on the grounds that it presents argument.[6] Because the district court can resolve the motion by focusing on the summary-judgment evidence attached to the motion without considering argumentative statements, the objection is without merit and is overruled.

To prove an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[7] When the plaintiff relies on circumstantial evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies.[8]

[Under that framework,] [f]irst, the employee must raise a genuine issue of

---

[4] Docket entry # 16 (dismissing the claims against the individual defendants because they are not employers under the ADEA).

[5] Fed. R. Civ. P. 56(c).

[6] Docket entry # 35, p. 1.

[7] *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2351 (2009).

[8] *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 896 (5th Cir. 2002).

material fact as to each element of his prima facie case. Then, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, the employee must raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination.[9]

Cisneros was 55 years old when he applied for the San Antonio ASAC position. Cisneros alleges that he was not selected for the position because of his age. A 38-year-old applicant—Alfred Hollenbeck—was selected for the position. Napolitano maintains that there is no evidence that age played a role in Cisneros's non-selection for the position.[10]

Napolitano presented summary judgment evidence indicating that Cisneros was not selected for the following reasons: The recommending officials—deputy SAC Robinette and SAC Pena—sought a person with immigration and supervisory experience.[11] Hollenbeck was experienced in immigration and supervision.[12] (The selecting official—former defendant Forman—approved the recommendations that Hollenbeck be promoted to ASAC.) The recommending officials sought a person with motivational skills, initiative and strong

---

[9] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001).

[10] For the purpose of the motion for summary judgment, Napolitano does not challenge Cisneros's ability to make out a prima facie case.

[11] Docket entry # 34, exh. 4, attach. C, p. 5 (Robinette stating that he considered the applicants' ability to meet the office's immediate and long term and programmatic needs, the balance with the existing managers, and the ability to provide results and complete tasks and quality of work); *id*., exh. 5, p. 54 (Robinette testifying that he needed someone with immigration experience because the job required oversight of 95-98% immigration work). *See also* docket entry # 35, exh. 1, p. 208, 241 (Pena characterizing the office of work as divided half and half between immigration work and non-immigration work and explaining that it was important to have someone with immigration experience considering that most employees in the San Antonio office had customs experience).

[12] Docket entry # 34, exh. 4, attach. B, p. 6 (Pena explaining that Hollenbeck possessed stronger leadership, communication, proactive initiative and results-driven supervisory qualities, as well as a superior knowledge of immigration as compared to Cisneros).

management experience, preferably with an immigration background.[13] Hollenbeck demonstrated those skills during the previous two years in his capacity as Acting ASAC.[14] The recommending officials viewed Hollenbeck as someone who could ease the tension resulting from the creation of ICE, an organizational change which merged former U.S. Customs employees with former Immigration and Naturalization Service employees.[15] These reasons are legitimate, nondiscriminatory reasons for not selecting Cisneros. Because Napolitano articulated legitimate, nondiscriminatory reasons, the burden shifted to Cisneros to raise a fact question about whether Napolitano's proffered reasons were merely a pretext for age discrimination.

To overcome Napolitano's first reason for not promoting Cisneros—that the recommending officials sought a person with immigration and supervisory experience and that

---

[13] Docket entry # 34, exh. 1, p. 160 (Robinette testifying that Hollenbeck accomplished his tasks as Acting ASAC tirelessly, timely, and accurately); *id*. at p. 162 (Robinette explaining that Cisneros lacked the motivational skills and the drive to get the kind of work performance that he demanded of his managers); *id*. at p. 226 (Pena responding that Hollenbeck had the ability to lead and motivate people, initiate programs, and interact with various components, and explaining that an investigative background was not as important for the job).

[14] Docket entry # 34, exh. 4, attach. B, pp. 3-4 (Pena opining that Hollenbeck possessed better leadership, motivational, communication, determination and interpersonal skills than the other applicants for the ASAC position and asserting that Hollenbeck's performance as Acting ASAC was exceptional); *id*., exh. 4, attach. C, p. 5 (Robinette opining that Cisneros lacked initiative and was sometimes late in completing time-sensitive projects and stating that Cisneros had never expressed an interest in the ASAC job), *id*., exh. 5, pp. 104, 108, 112-13, 149 (Robinette testifying that Cisneros lacked motivation, commitment, and knowledge of immigration issues).

[15] Docket entry # 34, exh. 1, p. 71 (witness Krockenberger testifying about perception that customs had overtaken immigration after the creation of ICE); *id*. at pp. 149-53 (Robinette explaining that Hollenbeck was chosen as Acting ASAC, in part, because immigration was the hottest topic challenging management at the ICE office and because Hollenbeck had immigration experience, as well as the managerial skill needed for the job); *id*. at exh. 2, p. 41 (Cisneros discussing the resentment that occurred because it appeared customs had taken over immigration); *id* at pp. 60, 88 (Cisneros agreeing that selecting Hollenbeck as Acting ASAC created a balance in leadership between customs and immigration and acknowledging that Hollenbeck had more immigration experience than he did).

Hollenbeck possessed such experience—Cisneros maintains he has more supervisory experience than Hollenbeck and complains that the job posting for the ASAC position did not list immigration experience as a job requirement. Cisneros contends that he is better qualified than Hollenbeck, in large part, because he has many years of criminal investigative experience.

When a plaintiff relies on better qualifications as evidence of pretext, disparities in qualifications must be "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[16] Cisneros presented summary judgment evidence about his qualifications for the position.[17] Cisneros's qualifications included the following: 30 years as a criminal investigator, 3 years of supervisory experience with ICE, various awards and commendations, and an undergraduate degree.[18] These qualifications are not of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen Hollenbeck over Cisneros for the ASAC position. Cisneros faults Hollenbeck for lacking a criminal investigative background,[19] but Robinette testified that criminal investigative experience was not as important

---

[16] *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 Fed. App'x 307, 313-14 (5th Cir. 2008) (clarifying the standard for raising a fact question about pretext when the plaintiff asserts that he is clearly better qualified than the person selected for the job).

[17] Cisneros summarized his qualifications in an appendix to his response to the motion for summary judgment.

[18] Docket entry # 35, app'x & exh. 2.

[19] Docket entry # 35, exh. 1, p. 21 (witness Simonds criticizing Hollenbeck because he lacked Cisneros's criminal investigative background); *id*., pp. 54-55, 61 (witness Krockenberger testifying that Hollenbeck lacked the investigative experience need to serve as Acting ASAC); *id*., exh. 4, pp. 34-41 (questioning Hollenbeck about his experience with criminal investigations).

to him in recommending an individual for selection as ASAC as managerial skills.[20] Cisneros's qualifications, including his experience as a criminal investigator, do not raise a fact question about whether Hollenbeck possessed the qualifications sought by the recommending officials.

The job posting likewise does not raise a fact question. The job posting did not list immigration experience as a job requirement,[21] but that omission does not create a fact question because the job posting was a generic posting. Robinette testified that the job description was a general job description used to solicit applicants for ASAC positions throughout the country.[22] The generality of the job posting is reflected on the face of the posting—the duty location reads as follows: "many vacancies - Site to be determined after selection is made, US." The recommending officials played no role in writing the job description or posting the job.[23] The omission of immigration experience on the job posting does not raise a fact question about pretext.[24]

To overcome Napolitano's second reason for not promoting him—that the recommending officials sought a person with motivational skills, initiative and strong

---

[20] Docket entry # 35, exh. A p. 153 (testifying that he was not looking for an investigator to serve as ASAC; he was looking for a manager).

[21] Docket entry # 35, exh. 7.

[22] Docket entry # 35, exh. A, pp. 144-45, 158, 173 (Robinette testifying about the job posting).

[23] Docket entry # 35, exh. A, p.171 (Robinette stating that the Office of Personnel Management prepared the job posting without his input).

[24] Cisneros also complains that Robinette's second choice for ASAC lacked immigration experience. Docket entry # 35, pp. 5-6. When questioned about why he recommended Roy Rivera even though Rivera lacked an immigration background, Robinette testified that Rivera was worthy of consideration based on his leadership qualities, but that the lack of immigration experience was the strike against him. Docket entry # 35, exh. 1, pp. 169-70.

management experience and that Hollenbeck demonstrated those skills during his years as Acting ASAC—Cisneros asserted that Hollenbeck's experience was secured by violating a clearly established agency policy.[25] According to Cisneros, allowing Hollenbeck to serve as Acting ASAC violated the Tri-Bureau Merit Promotion Plan (the plan) because the plan provides that a person can serve in a temporary position for only 120 days. The plan, however, governs temporary promotions, not temporary positions.[26] Robinette explained that the 120-day rule did not apply to Hollenbeck because he received no extra pay for serving as Acting ASAC.[27] Hollenbeck was not temporarily promoted to ASAC, but rather acted as ASAC. Robinette tesified that his predecessor choose Hollenbeck to serve as Acting ASAC[28] and that he allowed Hollenbeck to continue in the position because Hollenbeck did a good job.[29] Cisneros's reliance on the decision in *Eberle v. Gonzales*[30] is misplaced because the court of appeals did not equate failure to follow a promotion plan with pretext.

In *Eberle*, the plaintiff sought to raise a fact question about the defendant-employer's reason for not promoting him by asserting that he had scored higher on the merit promotion ranking than the younger selectee. The court explained that the employer's promotion plan used scores to determine which candidates would be selected for the best-qualified-applicant list and stated that the plaintiff had presented no competent summary judgment evidence that the

---

[25] Docket entry # 35, p. 6.

[26] Docket entry # 35, exh. 6, p. 12.

[27] Docket entry # 34, exh. 1, pp. 188, 197; *id.*, exh. 5, pp. 45-46, 48, 131-33.

[28] Docket entry # 34, exh. 5, pp. 56, 140-42).

[29] Docket entry # 34, exh. 5, p. 142.

[30] Docket entry # 35, p. 6.

7

employer failed to follow the promotion plan.[31] Neither the alleged violation of the promotion plan, nor the fact that Hollenbeck served as Acting ASAC for two years, raises a fact question about pretext.

To overcome Napolitano's third reason for not promoting him—that the recommending officials viewed Hollenbeck as someone who could ease the tension that resulted when customs employees were merged with immigration employees—Cisneros complains that prior to moving for summary judgment Napolitano failed to present the merger as a reason for not hiring him.[32] Cisneros argues that late reliance on Douglas Krockenberger's EEOC hearing testimony demonstrates pretext. Krockenberger preceded Robinette as Deputy SAC and appointed Hollenbeck to serve as Acting ASAC. During Cisneros's EEOC hearing, Krockenberger testified the merger created a perception that customs had taken over immigration. Krockenberger was Cisneros's witness. Although Cisneros faults Napolitano for adopting Krockenberger's testimony to support her motion for summary judgment, Cisneros also testified about resentment occurring because of the perception that customs had taken over immigration. Cisneros agreed that selecting Hollenbeck as Acting ASAC created a balance in leadership between customs and immigration. Robinette explained that both he and Pena had customs background and that he needed someone with immigration experience. Napolitano's reason is a logical consideration in recommending an ASAC. Napolitano's adoption of Krockenberger's testimony concerning the anticipated tension between immigration and customs does not raise a fact question.

---

[31] *Eberle v. Gonzales*, 240 Fed. App'x, 622, 631 (5th Cir. 2007).

[32] Docket entry # 35, p. 7.

Cisneros asserts that Napolitano has a past practice of denying promotion to ASAC to individuals who are within a few years of mandatory retirement and asserts that his summary-judgment evidence shows animus towards retirement eligible employees.[33] As evidence of age animus, Cisneros relies on Bruce Simonds's testimony during the EEOC hearing. Cisneros characterizes Simonds as having been stripped of his position as ASAC when customs and immigration merged and forced to reapply for his job.[34] However, the evidence is not as incriminating as Cisneros suggests. During the EEOC hearing, Simonds testified that he served as ASAC for enforcement support when the merger occurred. At that time, Simonds was 54 years old. He explained all GS-14 managers were required to reapply for their positions when ICE was created.[35] Simonds stated that he was not selected for an ASAC position upon reapplication. Simonds explained that there was only one ASAC position in San Antonio and that Hollenbeck was permitted to remain as Acting ASAC without rotating other agents into the position.[36] He stated that he felt Hollenbeck was being groomed to take the ASAC position[37] and opined that Cisneros had much more criminal investigative experience and supervisory experience than Hollenbeck.[38] Simonds characterized Hollenbeck as a very likeable person who was young enough to be shaped and molded by upper management, as compared to Cisneros

---

[33] Docket entry # 35, p. 9.

[34] Docket entry # 35, p. 9.

[35] Docket entry # 35, exh. 1, p. 9.

[36] *Id.*, p. 10.

[37] *Id.*, pp. 18, 37-40.

[38] *Id.*, p. 21.

who had only a few years before retirement.[39] This characterization does not raise a fact question about whether Cisneros was not selected because of his age because it constitutes conjecture. Conjecture is insufficient to raise a fact question.

**Recommendation**. Cisneros's case is based on his central belief that he is better qualified than the younger Hollenbeck. While Cisneros's summary-evidence shows that Cisneros is a seasoned criminal investigator and experienced supervisor, courts do not assess the validity of an employer's good faith belief as to an employee's competence in comparison to another without evidence of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job.[40] That is what Cisneros asks the district court to do. The record presents no fact question about discriminatory intent; it presents no fact question about pretext.

"The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."[41] Because a rational trier of fact could not find for Cisneros based upon the record evidence before the court, I recommend granting Napolitano's motion (docket entry # 34) and entering summary judgment in her favor.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the

---

[39] *Id*., pp. 38-40.

[40] *Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999).

[41] *James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[42] Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[43] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[44]

**SIGNED** on March 25, 2010.

*[signature: Nancy Stein Nowak]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[42] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[43] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[44] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).